IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

**STEPHANNE RENAE OCHOE JOHNSON**                               **PLAINTIFF**

v.                                                                  **CIVIL ACTION NO. 1:23-cv-123-JMV**

**COMMISSIONER OF**
**SOCIAL SECURITY**                                                                                    **DEFENDANT**

## ORDER REVERSING AND REMANDING

This matter is before the court on Plaintiff's complaint [1] for judicial review of the Commissioner of the Social Security Administration's partially favorable decision related to Petitioner's Title II application for a period of disability and disability insurance benefits and Title XVI application for supplemental security income. The undersigned held a hearing on May 29, 2024. Having considered the record, the administrative transcript, the briefs of the parties, the oral arguments of counsel and the applicable law, the undersigned finds the Commissioner's decision should be reversed and remanded for further proceedings consistent with this opinion.

### Standard of Review

The Court's review of the Commissioner's decision is limited to two inquiries: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the decision comports with relevant legal standards. *See* 42 U.S.C. § 405(g); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). When substantial evidence supports the Commissioner's findings, they are conclusive and must be affirmed. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Supreme Court has explained:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual

> determinations. And whatever the meaning of "substantial" in other contexts, *the threshold for such evidentiary sufficiency is not high*. Substantial evidence . . . is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (emphasis added) (citations and internal quotations and brackets omitted).

Under the substantial evidence standard, "[t]he agency's findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Nasrallah v. Barr*, 140 S. Ct. 1683, 1692 (2020) (citations and internal quotations omitted). In applying the substantial evidence standard, the Court "may not re-weigh the evidence in the record, nor try the issues *de novo*, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision." *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. *See Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

### Statement of the Case

On September 23, 2020, Petitioner filed her application for SSI, period of disability, and DIB, alleging disability beginning January 5, 2017. These claims were denied initially on February 3, 2021, and upon reconsideration on December 22, 2021. Thereafter, Petitioner filed a written request for hearing on February 3, 2022. On August 10, 2022, a telephonic hearing was held. Attorneys Jason L. Shelton and Thomas Reynolds appeared for the Petitioner, and Tina Stambaugh, an impartial vocational expert, testified at the hearing. At the hearing, the Petitioner amended her alleged onset date to July 1, 2019. With respect to the claim for period of disability and disability insurance benefits, the last date insured is December 31, 2020. Thus, Petitioner was required to establish disability on or before that date in order to be entitled to a period of disability

2

and disability insurance benefits.

The ALJ determined that the Petitioner was not disabled prior to December 22, 2022, but became disabled on that date. Thus, the ALJ found that Petitioner was not under a disability at any time through December 31, 2020, the date last insured.

At Step 1, the ALJ found Petitioner did not engage in substantial gainful activity since July 1, 2019, the amended alleged onset date. (TR 22). At Step 2, the ALJ found Petitioner to have the following severe impairments: disorders of the spine, abnormality of major joints (knees), fibromyalgia, obesity, PTSD, personality disorder, depression, and anxiety (TR 22). The ALJ determined at Step 3 that Petitioner's impairments were not presumptively disabling because they did not meet or medically equal the severity criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listings). (TR 23-25).

The ALJ then found that prior to December 22, 2022, the date the claimant became disabled, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant can occasionally climb stairs and ramps; never climb ladders, ropes, or scaffolds; occasionally balance and stoop; never kneel, crouch, or crawl; occasionally reach overhead; must avoid concentrated exposure to unprotected heights and moving machinery; can perform routine and repetitive tasks; understand, remember, and carry out short, simple instructions; sustain concentration, persistence, and pace for 2 hour blocks of time; make simple work-related decisions; occasionally interact with coworkers and supervisors; never interact with the general public; adapt to occasional and gradually introduced changes in the workplace; and needs option to stand and stretch for 2 minutes every 30 minutes. (TR 25).

The ALJ further found that since December 22, 2022, the claimant has had the residual

functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant can occasionally climb stairs and ramps; never climb ladders, ropes, or scaffolds; occasionally balance and stoop; never kneel, crouch, or crawl; occasionally reach overhead; must avoid concentrated exposure to unprotected heights and moving machinery; can perform routine and repetitive tasks; understand, remember, and carry out short, simple instructions; sustain concentration, persistence, and pace for 2 hour blocks of time; make simple work-related decisions; unable to successfully interact with coworkers and supervisors; never interact with the general public; adapt to occasional and gradually introduced changes in the workplace; unable to manage work stress; and needs option to stand and stretch for 2 minutes every 30 minutes. (TR 36).

With regard to past relevant work, the ALJ found that since July 1, 2019 (the amended alleged onset date), the claimant has been unable to perform her past relevant work as a dispatcher, emergency services (DOT No. 379.362-010), which is semi-skilled (SVP of 4) and generally performed at sedentary exertion and actually performed at medium exertion and as a customer service representative, insurance and benefits (DOT No. 219.387-014), which is semi-skilled (SVP of 4) and generally and actually performed at sedentary exertion. (Tr 33). Throughout the entirety of the relevant time period, Petitioner was a younger individual age 18-44. She has at least a high school education.

The ALJ noted that transferability of job skills was not material to the determination of disability prior to December 22, 2022. Beginning on December 22, 2022, the claimant was not able to transfer job skills to other occupations.

The ALJ found that prior to December 22, 2022, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant

numbers in the national economy that the claimant could have performed. (TR 33). The vocational expert testified that given her RFC prior to December 22, 2022, Petitioner would have been able to perform the requirements of representative occupations such as the following unskilled (SVP of 2) and sedentary exertion jobs: a general clerical worker (DOT No. 205.367-014) with 98,000 jobs in the national economy, an inspector (DOT No. 669.687-014) with 42,000 jobs in the national economy and an assembler (DOT No. 713.687-018) with 84,000 jobs in the national economy.

In making this finding, the ALJ acknowledged that the vocational expert's testimony was inconsistent with the DOT, and noted as follows:

> Although the vocational expert's testimony is inconsistent with the information contained in the Dictionary of Occupational Titles, there is a reasonable explanation for the discrepancy. The vocational expert testified her opinion regarding overhead reaching and standing/walking was based on her education, training, and experience.
>
> Based on the testimony of the vocational expert, the undersigned concludes that, prior to the established onset date of disability, considering the claimant's age, education, work experience, and residual functional capacity, the claimant was capable of making a successful adjustment to other work that existed in significant numbers in the national economy. Prior to December 22, 2022, a finding of "not disabled" is therefore appropriate under the framework of the above-cited rule in the Medical-Vocational Guidelines.

(TR 39).

Beginning on December 22, 2022, considering the claimant's age, education, work experience, and residual functional capacity, the ALJ found that there are no jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966). (TR 39).

Thus, the ALJ found that the Petitioner was not disabled prior to December 22, 2022, but became disabled on that date and has continued to be disabled through the date of the ALJ's decision. Her disability was expected to last twelve months past the onset date. Further, the ALJ

5

found that the claimant was not under a disability within the meaning of the Social Security Act at any time through December 31, 2020, the date last insured.

Petitioner appealed the ALJ's decision to the Appeals Council, and the Appeals Council issued an Order dated July 25, 2023, which affirmed the decision of the ALJ, making the appeal subject to judicial review pursuant to 42 U.S.C. § 405(g).

## Discussion

The Petitioner raises two issues, which will be addressed in turn below.

**A)    Was prejudicial error committed in the assessment of jobs available that Plaintiff could perform?**

Specifically, Plaintiff argues that the RFC assessed to Plaintiff prior to December 22, 2022, allowed Petitioner to only "occasionally reach overhead." According to the Selected Characteristics of Occupations, each of the three jobs that the VE found Plaintiff could perform prior to her disability required *frequent* use of the ability to reach. In his brief, the Commissioner acknowledges that "[a]ccording to the DOT, all of these jobs involve frequent reaching. *See* DOT #205.367-014, 1991 WL 671715 (general clerical worker), DOT #669.687-014, 1991 WL 686074 (inspector), and DOT #713.687-018, 1991 WL 679271 (assembler)." Comm. Br. [15] at 6.

To rebut Petitioner's argument, the Commissioner relies upon the fact that the ALJ stated in his decision, "Although the vocational expert's testimony is inconsistent with the information contained in the Dictionary of Occupational Titles, there is a reasonable explanation for the discrepancy. The vocational expert testified her opinion regarding overhead reaching and standing/walking was based on her education, training, and experience." (TR 39). However, in this assignment of error, Petitioner argues that this is not clear when reading the actual transcript because the question posed to the VE related to standing/walking limitation as opposed to the reaching limitation. The undersigned agrees.

6

SSR 00-4p sets forth multiple responsibilities and places them all on the ALJ. *Everhart v. Comm'r of Soc. Sec.*, No. 3:17-CV-188-DAS, 2018 WL 3614196, at *2 (N.D. Miss. July 27, 2018).

SSR 00-4p provides that:

> Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency. Neither the DOT nor the VE or VS evidence automatically "trumps" when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather than on the DOT information.

SSR 00-4p.

The testimony from the hearing in this matter was as follows:

ALJ: Do you understand that if you give us an opinion that conflicts with the information in the Dictionary of Occupational Titles that you need to advise us of the conflict and the basis for your opinion?

VE: Yes, Your Honor.

. . .

ALJ: All right, I have a series of hypotheticals I want to give you. The first one is going to be fairly lengthy, so I'm going to go slowly. Okay.

VE: Thank you.

ALJ: Consider a younger person with two years of college, past work as we've just discussed that performed sedentary work. This person can occasionally climb stairs and ramps, never climb ladders, ropes, or scaffolds, occasionally balance, stoop, kneel, crouch, and crawl, frequently reach overhead, must avoid concentrated exposure to unprotected heights and moving machinery. This person can perform routine and repetitive tasks, remember and carry out short, simple instructions, sustained concentration, persistence and pace for two hour blocks of time, make several work related decisions, occasionally interact with coworkers and supervisors, never interact with the general public, adapts to occasional and gradually introduced changes in the workplace, and have the option to stand and stretch for two minutes every 30 minutes. Would this person be able to perform any

of the past work?

VE: No, Your Honor. In my opinion, it would eliminate the past work of actually and generally performed due to both the skill level and the contact with the public that would be required in both of those jobs. In my opinion, Judge.

ALJ: Okay. Of course. Are there other jobs that can be performed under this hypothetical?

VE: Yes, Your Honor. In my opinion, it would permit a limited range of work at the sedentary exertional level that would be skilled. These samples are rated as sedentary, unskilled jobs with SVP of 2. One example, general clerical worker for general clerical works at the sedentary level, unskilled, DOT number is 205.367-014. In the US there are 98,000 of those jobs. Another example are inspectors. For inspectors at the sedentary level, unskilled DOT number 669 – in the US, there are 42,000 of those jobs. Another example are assemblers. Assemblers at the sedentary level on skilled DOT number 713.687-018. In the US, there are 84,000 of those jobs.

ALJ: Both jobs this person would never be able to kneel, crouch or crawl. Would that make a difference?

VE: No, Your Honor, that would still permit these example jobs with no change in the numbers, Sir.

ALJ: What if this person was able to occasionally reach overhead. Would that make a difference?

VE: No, Your Honor, reaching overhead would not be required in any of these occupations.

ALJ: What if this person could stand or walk only up to one hour per day, does that make a difference?

VE: No, Your Honor. In my opinion, that would not affect these jobs. And in my opinion, these sedentary jobs are being performed from a seated position. They only need to stand and walk to and from the work station. So that would not affect these example jobs and then Judge no change in the numbers.

ALJ: What do you base that on?

VE: I based it on my observation of these jobs being performed, Judge. And my education, training and experience.

(TR 77-80).

Again, with regard to the conflict between the VE's testimony and the DOT, the ALJ found that "The vocational expert testified her opinion regarding overhead reaching and standing/walking was based on her education, training, and experience." (TR 39). However, the Court agrees with Petitioner that this is not clear when one reads the actual transcript. When one reads the actual transcript, the question posed to the VE when she responded that her testimony was based on her observation of the jobs being performed and her education, training, and experience related to standing and walking up to one hour per day. After reviewing the transcript, it is not apparent that the VE ever gave a reasonable explanation for the apparent conflicts between the DOT description of these jobs and the RFC with respect to Plaintiff's reaching limitation.

The Commissioner argues in his brief that "when the VE explained the basis for her testimony, she was referring to all of her testimony (Doc. 7 at 80), not merely her testimony regarding standing and walking requirements, as Plaintiff suggests. *See* Plaintiff's Brief at 5-6. The VE did not specify or indicate that her testimony regarding her education, training and experience related only to the ALJ's hypothetical question regarding the standing and walking limitation. Doc. 7 at 80." Comm. Br. [15] at 7. However, the Court finds that the converse of that statement creates reversible error inasmuch as the VE did not specify or indicate that her testimony regarding her education, training and experience *did* relate to the ALJ's hypotheticals regarding standing and walking as well as reaching overhead. The Court declines to make such an inference.

Furthermore, SSR 00-4p requires that "the adjudicator will inquire, on the record, as to whether or not there is such consistency." Here, the ALJ informed the VE of this requirement on the record when he stated:

ALJ: Do you understand that if you give us an opinion that conflicts with the information in the Dictionary of Occupational Titles that you need to advise us of the conflict and the basis for your opinion?

9

  VE: Yes, Your Honor.

(TR 77).

  Yet, the VE did not comply with these instructions because the VE never stated that her testimony was inconsistent with the DOT. Even more to this point, the VE affirmatively stated, "No, Your Honor, reaching overhead would not be required in any of these occupations." It is not as if the VE stated that reaching overhead is not required at all as these jobs are *actually performed*. The VE's affirmative statement that "reaching overhead would not be required in any of these occupations" period is wholly incorrect based upon the information provided in the Selected Characteristics of Occupations.

  Petitioner cites numerous cases from this district in support of her argument that because the ALJ failed to comply with SR 004-p, the Court cannot conclude that there was substantial evidence to support the outcome of the administrative hearing. In *Everhart v. Commissioner*, the Court reasoned that SR 004-p "places the affirmative duty on the ALJ to resolve any conflicts *before* relying on VE evidence, to explain in the decision how he or she resolved the conflict, and to explain the resolution of the conflict *irrespective of how the conflict was identified*." *Id.* (emphasis added) (internal citations omitted). *Everhart v. Comm'r of Soc. Sec.*, No. 3:17-CV-188-DAS, 2018 WL 3614196, at *2 (N.D. Miss. July 27, 2018). In *Everhart*, there was a potential conflict with the DOT related to overhead reaching, and the Court held that the ALJ erred in failing to resolve that conflict as required by SSR 00-4p. *Id.* Ultimately, Judge Sanders reversed and remanded the case with instructions for the ALJ to determine whether the job requirements identified by the VE are, in fact, consistent with the DOT and the claimant's limitations. *Id.* at *4.

  Similarly, *Herrod v. Commissioner*, Civ. No. 4:20-cv-73- DAS (N. D. Miss. 2021), *report and recommendation* adopted on Aug. 3, 2021, involved an unresolved conflict between the VE

10

testimony and the DOT related to the frequency of overhead reaching. In recommending that the case be reversed and remanded, Judge Sanders reasoned that "ALJs listen to VE testimony very routinely and are more familiar with the vocational experts' field than this court. But SSR 00-04p prohibits them from filling a gap in VE testimony and demands expert assistance in resolving the conflict. This court, without the ALJ's familiarity with job requirements, should likewise decline to act as its own vocational expert." *Herrod v. Commissioner*, Civ. No. 4:20-cv-73-DAS (N. D. Miss. 2021), *report and recommendation* adopted on Aug. 3, 2021.

In this case, there is an apparent unresolved conflict between the DOT, its companion publications, and the VE's testimony regarding overhead reaching and whether there are, in fact, jobs in the national economy which Johnson could have performed based upon the RFC assigned to her prior to December 22, 2022. Accordingly, this case must be reversed and remanded in order to allow the ALJ to make that determination.

**B)** **Did the ALJ err in deciding Plaintiff's onset date of disability?**

The Court notes that the ALJ appears to have thoroughly analyzed the record, as there is over twenty pages of analysis in his opinion. [TR 19-40]. While the undersigned does not find Petitioner's second argument to be meritorious, she will briefly address the second argument in the interest of completeness.

Petitioner argues that the ALJ's finding that she was disabled from December 22, 2022, forward was "arbitrary because, at a minimum, Plaintiff exhibited severe symptoms related to her severe mental health impairments from her amended onset date and prior to her date last insured of December 31, 2020." Pl.'s Br. [14] at 10. At the hearing on May 29, 2024, Petitioner's counsel reiterated this argument by alleging that it is not as if Ms. Johnson's issues started the date that she saw Dr. Masur. In response, the Commissioner argues that substantial evidence supports the ALJ's

11

finding that prior to December 22, 2022, Plaintiff had the RFC to perform a reduced range of sedentary work. The undersigned agrees with the Commissioner that Petitioner has not pointed to evidence that prior to December 22, 2022, she had functional limitations that exceeded the limitations that the ALJ set forth in his RFC determination.

In finding that Petitioner was disabled beginning on December 22, 2022, the ALJ relied upon Dr. Masur's consultative psychological examination of Petitioner on December 21, 2022. Dr. Masur's examination revealed Petitioner had marked limitation in her ability to interact with others. (TR 37). Dr. Masur diagnosed Plaintiff with somatic symptom disorder, PTSD, intermittent explosive disorder, paranoid personality disorder, and alcohol use disorder. (TR 1297). Dr. Masur opined that Plaintiff's personality difficulties would likely preclude her ability to perform routine, repetitive work-related tasks. (TR 1297). He found that Petitioner would be unable to get along productively with coworkers and unable to manage workplace stress. (TR 1297).

Petitioner argues that the ALJ was "picking and choosing" behavior as prohibited by *Loza v. Apfel*, 219 F.2d 378 (5th Cir. 2000), and that the case should be remanded for further consideration of Plaintiff's severe mental health impairments that occurred prior to the expiration of her DLI, which was December 31, 2020. Yet, Petitioner only cites to five instances in her brief that allegedly support Petitioner's disability that occurred prior to the DLI. Furthermore, there was sufficient evidence in the record for the ALJ to rely upon that showed that prior to Dr. Masur's examination, Petitioner was not disabled, such as a September 24, 2021, comprehensive mental status examination performed by Patsy H. Zakaras, Ph.D., which found that Petitioner was capable of performing simple, routine, repetitive tasks and following and understanding simple directions. She also appeared capable of relating to and interacting with others. (TR 630). In the September 24, 2021, CE, Petitioner was verbal, pleasant and oriented and had logical and goal-oriented

thought processes. She admitted she has a boyfriend and four children ages, 3, 7, 13, and 18 and she occasionally drives, and picks up her children (TR 629) (Exhibit B9F).

The undersigned acknowledges that there was a prior denial of Petitioner's claim and that based upon the evidence of record, she had experienced some mental health impairments prior to the expiration of her DLI, and prior to December 22, 2022. These impairments were acknowledged by the ALJ in his decision where he found Petitioner's symptoms consistent with Dr. Masur's CE on December 21, 2022. Nonetheless, it is not the role of this Court to reweigh the evidence, only to determine whether substantial evidence supports the ALJ's decision. *See Bowling*, 36 F.3d at 434. In this instance, there is substantial evidence to support the ALJ's finding that prior to December 22, 2022, Plaintiff had the RFC to perform a reduced range of sedentary work. Accordingly, this issue is without merit.

## Conclusion

For the reasons stated above, the undersigned finds that the Commissioner's decision should be and is hereby reversed and remanded so that the ALJ may perform the necessary inquiry under SSR 00-4p and resolve whether there are, in fact, jobs in the national economy which Johnson could have performed based upon the RFC assigned to her prior to December 22, 2022. A final judgment consistent with this opinion will be entered.

**SO ORDERED** this, the 7th day of June, 2024.

/s/ Jane M. Virden
U.S. Magistrate Judge